Kevin Tang Esq. (SBN: 291051)
**LAW OFFICES OF LIONEL GIRON**
337 North Vineyard Avenue, Suite 100
Ontario, California 91764
Tel. (909) 397-7260; Fax. (909)-397-7277
notices@lglawoffice.com

Attorney for Debtor: Bear Figueroa, LLC

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **In re:**<br><br>**BEAR FIGUEROA, LLC**<br><br>**Debtor and Debtor in Possession** | **CHAPTER 11**<br><br>**Case No.** 2:17-bk-14249-VZ<br><br>**NOTICE OF MOTION AND MOTION FOR AUTHORITY TO SELL ESTATE PROPERTY (10520 SOUTH FIGUEROA ST., LOS ANGELES, CA 90003) FREE AND CLEAR OF ALL LIENS, CLAIMS AND INTERESTS; AND GRANTING CERTAIN OTHER RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF DENISE JOHNSON IN SUPPORT THEREOF**<br><br>**HEARING:**<br>**Date: August 29, 2017**<br>**Time: 11:00 a.m**<br>**Courtroom: 1368**<br>**Location: 255 E. Temple Street, Los Angeles, California, CA 90012**<br>**Judge: Honorable Vincent Zurzolo** |

**TO THE HONORABLE VINCENT ZURZOLO, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; AND ALL OTHER**

**PARTIES IN INTEREST AND BY AND THROUGH THEIR LEGAL COUNSEL OF RECORD:**

PLEASE TAKE NOTE that on August 29, 2017, at 11:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 1368 of the above-entitled United States Bankruptcy Court located at 255 E. Temple Street, Los Angeles, CA 90012, Bear Figueroa, LLC (the "Debtor") the debtor in the above Chapter 11 Bankruptcy case hereby moves this Court for the entry of an order authorizing and approving the sale of the Debtor's real property located at 10520 SOUTH FIGUEROA ST., LOS ANGELES, CA 90003 (herein after the "Property") free and clear of all liens, claims and interests pursuant to 11 U.S.C. §363, and granting certain additional relief requested herein and in the attached Memorandum of Points and Authorities.

Salt Fish Inc. (herein after the "Buyer"), a limited liability corporation, has made an offer to purchase the Property for the sum of $2,600,000.00. By this motion, the debtor seeks approval of the sale of the Property to the Buyer, and for the additional relief set forth below.

**PLEASE TAKE FUTHER MOTICE** that pursuant to *Local Bankruptcy Rule 9013-1,* any party opposing the relief sought by the Motion must file a written opposition setting forth the facts and law upon which the opposition is based and must appear at the hearing on the Motion. Any factual allegations set forth in such written response must be supported by competent and admissible evidence.

Any response or opposition to the Motion must be filed with the Court and served on Debtor's counsel, the office of the United States Trustee, and all parties in interest, **at least fourteen (14) days prior to the scheduled hearing date on the Motion** (not excluding Saturdays, Sundays, or legal holidays).

Pursuant to *Local Bankruptcy Rule 9013-1*, any response not timely filed and served may be deemed by the Court to be consent to the granting of the relief requested by the Motion

Dated: August 7, 2017

Law Offices of Lionel Giron
/s/ Kevin Tang
Kevin Tang, Esq. 291051
Attorney for Debtor

**MOTION**

Bear Figueroa, LLC, the Debtor (hereinafter the “Debtor”) in the above Chapter 11 Bankruptcy case, by and through its attorney of record, respectfully moves this Court for the entry of an order authorizing and approving the sale of Debtor’s real property located at 10520 SOUTH FIGUEROA ST., LOS ANGELES, CA 90003 (herein after the “Property”) to Salt Fish Inc (hereinafter the “Buyer”) a limited liability corporation, or such other person or entity as may successfully overbid at the hearing, free and clear of all liens, encumbrances, claims or interests pursuant to 11 U.S.C. §363(f), and granting certain additional relief requested herein and in the attached Memorandum of Points and Authorities.

This Motion is based upon the preceding Notice of Motion; 11 US.C. §363 and 105; Federal Rules of Bankruptcy Procedure 2002 and 6004; Local Bankruptcy Rule 6004-1; the attached Memorandum of Points and Authorities; the Declaration of the Debtor submitted herewith; and such additional evidence and argument as may be presented at or before the hearing on this Motion.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order:

(1) Finding the notice of the Motion was adequate and appropriate under the circumstances;

(2) Granting the Motion in its entirety:

(3) Authorizing and approving the sale of the Property to Salt Fish Inc. (the “Buyer”), free and clear of all liens, claims, and interests;

(4) Authorizing the Debtor to take all necessary and reasonable steps to consummate the sale of the Property;

(5) Authorizing the payments of liens, claims and interests on and against the Property (collectively referred to herein as the “Liens, Claims and Interests”)’

(6) Compelling all holders of the liens and encumbrances, if any, to execute any

and all documentation that may be required to allow escrow to close;

(7) Allowing the Debtor, pursuant to 11 U.S.C. § 542(a), to deliver the Property to the purchaser free and clear of any tenancy, except as described herein;

(8) Granting such other and further relief as the Court deems just and proper under the circumstances.

Dated: August 7, 2017

Law Offices of Lionel Giron
/s/ Kevin Tang
Kevin Tang, Esq. 291051
Attorney for Debtor

# MEMORANDUM OF POINTS AND AUTHORITIES
## I. STATEMENT OF FACTS

### A. Background of the Debtor's Bankruptcy Case.

Bear Figueroa, LLC (hereinafter the "Debtor") owns a twenty-one unit apartment building located at 10520 S. Figueroa St., Los Angeles, CA 90003, that is operated and by its Managing Members, Denise Johnson and Gladney Johnson (hereinafter the "Property"). The Property is encumbered by a first lien in favor of Evergreen Advantage, LLC and another lien by the Los Angeles County Tax Collector. The Debtor defaulted on mortgage payments to Evergreen Advantage, LLC beginning on November 2016. Evergreen Advantage, LLC recorded a notice of default and a notice of trustee's sale. The foreclosure sale was scheduled for April 7, 2017. The Debtor commenced its bankruptcy case by filing a voluntary petition under Chapter 11 of 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") on April 6, 2017. The intended purpose for this bankruptcy case is for the Debtor to liquidate its assets and payoff debts. The subject of this Motion is the following real property:

| | |
|---|---|
| 10520 SOUTH FIGUEROA ST., LOS ANGELES, CA 90003 | 1st: Evergreen Advantage, LLC<br>2nd: Los Angeles County Tax Collector |

### B. Brief Summary of the Terms of the Sale.

On July 1, 2017, the Debtor accepted an offer to purchase the Property by Salt Fish Inc. (hereinafter the "Buyer"). A true and correct copy of the Residential Income Property Purchase Agreement between the Debtor and the Buyer is attached hereto as **Exhibit 2.** By way of summary, the principal terms of agreement are as follows:

(1) The purchase price is $2,600,000.00.

(2) The Buyer has made a deposit of $50,000.00 into escrow upon execution of the purchase agreement.

(3) The loan to Evergreen Advantage LLC will be paid in the amount of $1,939,526.92 plus accrued interests on the closing date.

(4) The Property taxes will be paid in the amount to be determined at closing.

(5) The Property will be sold "as is, where is" with no warranties or representations of any kind whatsoever.

(4) Escrow is to close 90 days after acceptance and upon this Court's approval.

**C. Liens, Encumbrances and Other Interests.**

The proposed sale will payout the first lien holder, Evergreen Advantage, LLC in full from the proceeds of sale in the amount of $2,575,560.00.

**D. Payment of Other Expenses.**

By this Motion, the Debtor proposes that it be authorized to pay the following additional amounts to the following entities through escrow

(1) estimated administrative expenses of $15,000 subject to court approval of application for compensation of legal fees.

**E. Marketing Efforts and Identification of the Buyer.**

The Debtor listed this property for sale and attempted to sell this property as real property for sale by owner. For several months, the Debtor has shown the property to many interested buyers, advertising locally and nationally.

**F. Sale of the Property is in the Best Interest of the Estate.**

The property is currently a financial burden to the Estate. The Debtor respectfully submits that the proposed sale is in the best interest of his estate and his creditors because, as demonstrated herein, the proposed sale will result in payoff of one of the Debtor's most significant creditors, (Evergreen Advantage, LLC and the Los Angeles County Tax Collector) after the payment of all amounts required to be paid to brokers, taxing authorities and closing costs in connection with the sale of the Property.

## II. DISCUSSION

A. The Court Should Authorize the Debtor to Sell the Property.

**1. The Debtor Has Complied with All Notice Requirements Under the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rules Governing the Sale of the Property**

Section 363(b)(1) provides that the Debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 102(1) defines "after notice and a hearing" as "after such notice as is appropriate in the particular circumstances." 11 U.S.C. § 102(1).

Rule 2002(a)(2) of the Federal Rules of Bankruptcy Procedure requires at least 21days notice of a proposed sale of property of the estate other than in the ordinary course of business, unless the Court for cause shown shortened the time or directs another method of giving notice. Fed. R. Bankr. Proc. 2002 (a)(2). Rule 2002(c)(1) requires that the notice of a proposed sale include the date, time and place of any public sales, the terms and conditions of any private sale, and the time fixed for filing objections. Fed R. Bankr. Proc. 2002(c)(1). It also provides that the notice of sale or property is sufficient if it generally describes the property. Id.

Rule 6003(c) provides that a motion for authority to sell property free and clear of liens or other interests must be made in accordance with Rule 9014 and must be served on the parties who have liens or other interests in the property to be sold. Fed R. Bankr. Proc. 6004(c). Local Bankruptcy Rule 9013-1(d)(2) requires that a notice of motion and motion be served at least 21 days before the hearing on the date specified in the notice. Loc. Bankr. R. 9013-1(d)(2).

The Debtor will serve all creditors in his case. The Debtor has complied with all of the above provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules.

***2. The Sale Motion Should be Approved Because Good Business Reasons Exist to Approve the Sale of the Property, the Purchase Price for the Property is Fair and Reasonable, and the Proposed Sale is in the Best Interests of the Debtor's Estate and His Creditors.***

As a general matter, a Court considering a motion to approve a sale under §363(b) should determine from the evidence presented before it that a "good business reason" exists to grant such a motion. In re Lionel Corp., 722 F.2d 1063, 1071 (2d. Cir. 1983). In

addition, the Court must further find it is in the best interest of the estate. To make this determination, a Court should consider whether:

(1) the sale is fair and reasonable (i.e., the price to be paid is adequate);

(2) the property has been given adequate marketing;

(3) the sale is in good faith (i.e., there is an absence of any lucrative deals with insiders); and

(4) adequate notice has been provided to creditors.

*In re Wilde Horse Enterprises, Inc*., 136 B.R. 830, 841-2 (Bankr. C.D. Cal. 1991); In re *Mama's Original Foods, Inc.*, 234 B.R. 500, 502-505 (C.D. Cal. 1999). The Debtor submits that the proposed sale of the Property to George Calcote satisfies each of these requirements.

a. **Sound Business Purpose**

The Ninth Circuit Bankruptcy Appellate Panel in *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19-20 (9th Cir. B.A.P. 1988) has adopted a flexible case-by-case test to determine whether the business purpose for a proposed sale justifies disposition of property of the estate under Section 363(b). The facts pertaining to the sale at issue here amply substantiate the Debtor's business decision that the contemplated sale of the Property to the Buyer or a successful over bidder serves the best interests of the estate's creditors and merits the Court's approval. As discussed herein, the Property has been actively marketed by the Debtor.

The proposed sale, or any overbid, of the Property should result in the Debtor obtaining the highest and best price for the Property. As set forth in the Declaration of Denise Johnson, the Debtor's projected sale of the Property will generate substantial funds to pay the 1st lienholder. Thus, the Debtor believes that the proposed sale of the Property is in the best interest of the Debtor's estate and his creditors.

b. **Fair and Reasonable Price**

In order for a sale to be approved under § 363(b), the purchase price must be fair and reasonable. *See generally, In re Canyon Partnership*, 55 B.R. 520 (Bankr. S.D. Cal.

1985). The trustee is given substantial discretion in this regard. *Id*. In addition, Courts have broad discretion with respect to matters under § 363(b). *See Big Shanty Land Corp. v. Comer Properties, Inc.*, 61 B.R. 272, 278 (Bankr. N.D. Ga. 1985). In any sale of estate assets, the ultimate purpose is to obtain the highest price for the property sold. *In re Wilde Horse Enterprises, Inc.*, 136 B.R. at 841 (*citing Matter of Chung King, Inc., 753 F.2d 547 (7th Cir. 1985), In re Alpha Industries, Inc*., 84 B.R. 703, 705 (Bankr. Mont. 1988)).

The Buyer is a serious buyer and has made a sound offer. Thus, based on the response to the foregoing efforts and the Debtor's familiarity with current market conditions, the Debtor believes that the price offered for the Property by the Buyer, or any over bidder, represents the fair market value of the Property. As a result, the Debtor submits that the final purchase price to be paid by the Buyer represents a fair and reasonable price for the Property.

c. **Adequate Marketing**

The Debtor has evaluated the offer on the Property and believes the price is reasonable given market values and seeks to apply the proceeds of the sale to pay the lien holders on the Property. Based on the foregoing, the Debtor submits that the Property has been more than adequately marketed.

d. **Good Faith**

When a Bankruptcy Court authorizes a sale of assets pursuant to § 363(b)(1), it is required to make a finding with respect to the "good faith" of the purchaser. *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 149 (3d Cir. 1986). With respect to the Trustee's conduct in conjunction with the sale of the Property the good faith requirement focuses principally on whether there is any evidence of "fraud, collusion between the purchase and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *Id. at 147; In re Wilde Horse Enterprises*, 136 B.R. at 842.

The Debtor negotiated the agreement with the Buyer at arm's length, and the Buyer is not related to, nor an "insider" of the Debtor as that term is defined in the Bankruptcy Code. 11 U.S.C. § 101(31). Moreover, there has been no fraud or collusion in connection with the proposed sale because everyone who expressed an interest in the Property was able to make

an offer on the Property and which offer was thoroughly considered by the Debtor. Based on the foregoing, the Debtor submits that the Buyer is a "good faith" purchaser.

e. **Accurate and Reasonable Notice**

The purpose of the notice is to provide an opportunity for objections and hearing before the Court if there are objections. *In re Karpe*, 84 B.R. 926, 930 (Bankr. MD.Pa. 1988). A notice is sufficient if it includes the terms and conditions of the sale and if it states the time for filing objections. *Id.*

As set forth above, the Debtor served this Notice of Motion and Motion on the United States Trustee, all of the Debtor's known creditors and all parties requesting special notice. The Notice includes the date, time and place of the hearing and the time fixed for filing objections thereto. This Notice and Motion were served upon the parties who have liens and/or claims against, or interests in, the Property, and the Debtor filed the Notice and Form 6004-2 with the Clerk of the Bankruptcy Court, as required by Local Bankruptcy Rule 6007-1(f), so that the Clerk of the Bankruptcy Court could publish information regarding the proposed sale. Thus, the Debtor submits that the notice of the sale should be deemed adequate, accurate and reasonable by the Court.

***3. The Sale of the Property Should Be Free and Clear of All Liens, Claims, and Interests Under 11 U.S.C. § 363(f).***

Bankruptcy Code § 363(f) provides that a trustee may sell property of the estate "free and clear of any interest in such property" if:

(1) applicable non-bankruptcy law permits the sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a

money satisfaction of such interest.

11 U.S.C. § 363(f). Because § 363(f) is in the disjunctive, the Trustee must only meet one of the five subsections of § 363(f) in order to sell the Property free and clear of all liens, claims, and interests. *In re Whittemore*, 37 B.R. 93, 94 (Bankr. D. Or. 1984).

The Debtor will use the proceeds of the sale to pay off the First lienholder.

**III. CONCLUSION**

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order:

(1) Finding that notice of the Motion was adequate and appropriate under the circumstances;

(2) Granting the Motion in its entirety;

(3) Authorizing and approving the sale of the Property to Sale Fish Inc. (the “Buyer”) free and clear of all liens, claims, and interests;

(4) Authorizing the Debtor to take all necessary and reasonable steps to consummate the sale of the Property;

(5) Authorizing payments of the liens, claims and interests on and against the Property (collectively referred to herein as the “Liens, Claims and Interest”);

(6) Compelling all holders of the liens and encumbrances, if any, to execute any and all documentation that may be required to allow escrow to close;

(7) Allowing the Debtor, pursuant to 11 U.S.C. § 542(a), to deliver the Property to the purchaser free and clear of any tenancy, except as described herein;

(8) Granting such other and further relief as the Court deems just and proper under the circumstances.

Dated: August 7, 2017

Law Offices of Lionel Giron
/s/ Kevin Tang
Kevin Tang, Esq. 291051
Attorney for Debtor

**DECLARATION OF DENISE JOHNSON**

I, Denise Johnson, do hereby declare that all of the following is true and correct to the best of my personal knowledge and if called upon as a witness, I could and would competently testify to the truthfulness of all of the below statements:

1. I am one of the managing members of the Debtor and debtor-in-possession in the above referenced case.
2. I seek Court approval of the Motion to Sell in order to complete the sale with Salt Fish Inc.
3. The owner of the real property located at10520 SOUTH FIGUEROA ST., LOS ANGELES, CA 90003 (“Property”) is Bear Figueroa, LLC.
4. The sale of the Property to Buyer will generate proceeds of $2,575,560. Attached as **Exhibit 1** is an estimated closing statement.
5. I negotiated the Purchase Agreement with the Buyer. A copy of the Purchase Agreement, with all amendments thereto, is attached as **Exhibit 2**. The Purchase Agreement provides for a purchase price of $2,600,000.00.
6. The Property is encumbered by a First Deed of Trust in favor of Evergreen Advantage, LLC. I am informed and believe the amount currently owed on this loan is $1,939,527.00.
7. I am informed and believe the defaulted property taxes amount to $22,532.
8. In the exercise of my business judgment, I believe it is in the best interests of the Estate to sell the Property to the Buyer.

///

///

9. The Property is currently a burden on the estate and a sale of the Property will satisfy the first and second liens.

I declare under penalty of perjury that the foregoing is true and correct. Executed on the 7th day of August 2017, at Los Angeles, California.

Date: August 7, 2017



**EXHIBIT 1**

Tower Escrow Inc.

Tower Escrow Inc.
1709 S. Nogales Street, Suite 208
Rowland Heights, CA 91748

Phone: (626) 810-1222
Fax: (626) 810-1220

## SELLER'S ESTIMATED NET PROCEEDS

**PROPERTY:** 10520 S. Figueroa St.
Los Angeles, CA

**DATE:** August 4, 2017
**CLOSING DATE:** September 29, 2017

**SELLER:** Bear Figueroa LLC

**ESCROW NO.:** R-000001-XX

| | DEBITS | CREDITS |
|---|---|---|
| **FINANCIAL CONSIDERATION** | | |
| Total Consideration | | 2,600,000.00 |
| **OTHER DEBITS/CREDITS** | | |
| Natural Hazard Disclosure Report For Real Property Report | 200.00 | |
| **TITLE/TAXES/RECORDING CHARGES - Title 365 Company** | | |
| Owners Title Policy | 4,092.00 | |
| Title - Sub Escrow Fee | 62.50 | |
| Title Wire Fee (if applicable) | 50.00 | |
| Documentary Transfer Tax | 2,860.00 | |
| City Transfer Tax | 11,700.00 | |
| **ESCROW CHARGES - Tower Escrow Inc.** | | |
| Escrow Fee | 5,400.00 | |
| Drawing Grant Deed | 75.00 | |
| **Net Proceeds** | 2,575,560.50 | |
| **TOTAL** | $ 2,600,000.00 | $ 2,600,000.00 |

**THIS IS AN ESTIMATE ONLY AND FIGURES ARE SUBJECT TO CHANGE**

______________________________
Seller

**EXHIBIT 2**

CALIFORNIA ASSOCIATION OF REALTORS®

# DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP

**(Selling Firm to Buyer)**
**(As required by the Civil Code)**
**(C.A.R. Form AD, Revised 12/14)**

☐ (If checked) This fo n is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(k and (m).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency rel: tionship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:

To the Seller: A Fiducia y duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.

To the Buyer and the Seller:

(a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
(b) A duty of honest and fair dealing and good faith.
(c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**

A selling agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:

To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.

To the Buyer and the Seller:

(a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
(b) A duty of honest and fair dealing and good faith.
(c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties.

An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**

A real estate agent, either acting directly or through one or more associate licensees, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.

In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:

(a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
(b) Other duties to the Seller and the Buyer as stated above in their respective sections.

In representing both Seller and Buyer, the agent may not, without the express permission of the respective party, disclose to the other party that the Seller will accept a price less than the listing price or that the Buyer will pay a price greater than the price offered.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE).**

☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant [signature] *SALT FISH INC* Date July 1, 2017

☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant ______________ Date ______________

Agent *FOR SALE BY OWNER* BRE Lic. # ______________
Real Estate Broker (Firm)

By ______________ BRE Lic. # ______________ Date ______________
(Salesperson or Broker-Associate)

Agency Disclosure Compliance (Civil Code §2079.14):

When the listing brokerage company also represents Buyer/Tenant: The Listing Agent shall have one AD form signed by Seller/Landlord and a different AD form signed by Buyer/Tenant.

When Seller/Landlord and Buyer/Tenant are represented by different brokerage companies: (i) the Listing Agent shall have one AD form signed by Seller/Landlord and (ii) the Buyer's/Tenant's Agent shall have one AD form signed by Buyer/Tenant and either that same or a different AD form presented to Seller/Landlord for signature prior to presentation of the offer. If the same form is used, Seller may sign here:

Seller/Landlord ______________ Date ______________ Seller/Landlord ______________ Date ______________
*BEAR FIGUEROA LLC*

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
ALL RIGHTS RESERVED.

Reviewed by ______ Date ______

EQUAL HOUSING OPPORTUNITY



TM Real Estate Brokers 1800 Pt Verde Ave # E Long Beach, CA 90815 Phone: 562.244.0093 Fax: 562.598.9846 Untitled
Tony Amer
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

EXHIBIT 2

## CIVIL CODE SECTIONS 2079.24 (2079.16 APPEARS ON THE FRONT)

**2079.13** As used in Sect ns 2079.14 to 2079.24, inclusive, the following terms have the following meanings: **(a)** "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Pa 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. **(b)** "Associate licensee" mea: s a person who is licensed as a real estate broker or salesperson under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Prof: ssions Code and who is either licensed under a broker or has entered into a written contract with a broker to act as the broker's agent in connection with acts req. ring a real estate license and to function under the broker's supervision in the capacity of an associate licensee. The agent in the real property transaction bea: responsibility for his or her associate licensees who perform as agents of the agent. When an associate licensee owes a duty to any principal, or to any buyer · seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the associate licensee functic s. **(c)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an ager or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Bu er" includes vendee or lessee. **(d)** "Commercial real property" means all real property in the state, except single-family residential real property, dwelling units m de subject to Chapter 2 (commencing with Section 1940) of Title 5, mobilehomes, as defined in Section 798.3, or recreational vehicles, as defined in Section 799.2: **(e)** "Dual agent" means an agent acting, either directly or through an associate licensee, as agent for both the seller and the buyer in a real property transaction. **(f)** "L sting agreement" means a contract between an owner of real property and an agent, by which the agent has been authorized to sell the real property or to find or obt: a buyer. **(g)** "Listing agent" means a person who has obtained a listing of real property to act as an agent for compensation. **(h)** "Listing price" is the amount expr: ssed in dollars specified in the listing for which the seller is willing to sell the real property through the listing agent. **(i)** "Offering price" is the amount expressed in dol rs specified in an offer to purchase for which the buyer is willing to buy the real property. **(j)** "Offer to purchase" means a written contract executed by a buyer acti through a selling agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(k)** "Real property" means any estate specified by s: bdivision (1) or (2) of Section 761 in property that constitutes or is improved with one to four dwelling units, any commercial real property, any leasehold in these ty es of property exceeding one year's duration, and mobilehomes, when offered for sale or sold through an agent pursuant to the authority contained in Section 101: .6 of the Business and Professions Code. **(l)** "Real property transaction" means a transaction for the sale of real property in which an agent is employed by one or m: e of the principals to act in that transaction, and includes a listing or an offer to purchase. **(m)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real pr: erty from the seller to the buyer, and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contra within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(n)** "Seller" means the transferor in a real prope y transaction, and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of hich he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor. **(o)** "Selling agent" means a listing agent who acts alo: e, or an agent who acts in cooperation with a listing agent, and who sells or finds and obtains a buyer for the real property, or an agent who locates property for a bu r or who finds a buyer for a property for which no listing exists and presents an offer to purchase to the seller. **(p)** "Subagent" means a person to whom an agen delegates agency powers as provided in Article 5 (commencing with Section 2349) of Chapter 1 of Title 9. However, "subagent" does not include an associate lice: ee who is acting under the supervision of an agent in a real property transaction.

**2079.14** Listing agents a: d selling agents shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and, except as . ovided in subdivision (c), shall obtain a signed acknowledgement of receipt from that seller or buyer, except as provided in this section or Section 2079.15, as follo: : **(a)** The listing agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. **(b)** The selling agent shall provide the disclos. e form to the seller as soon as practicable prior to presenting the seller with an offer to purchase, unless the selling agent previously provided the seller with a opy of the disclosure form pursuant to subdivision (a). **(c)** Where the selling agent does not deal on a face-to-face basis with the seller, the disclosure form prepared y the selling agent may be furnished to the seller (and acknowledgement of receipt obtained for the selling agent from the seller) by the listing agent, or the sellin agent may deliver the disclosure form by certified mail addressed to the seller at his or her last known address, in which case no signed acknowledgement of rec: ot is required. **(d)** The selling agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase, except al if the offer to purchase is not prepared by the selling agent, the selling agent shall present the disclosure form to the buyer not later than the next business day aft · the selling agent receives the offer to purchase from the buyer.

**2079.15** In any circumsta ce in which the seller or buyer refuses to sign an acknowledgement of receipt pursuant to Section 2079.14, the agent, or an associate licensee acting for an ag: t, shall set forth, sign, and date a written declaration of the facts of the refusal.

**2079.16** Reproduced on age 1 of this AD form.

**2079.17 (a)** As soon as p: cticable, the selling agent shall disclose to the buyer and seller whether the selling agent is acting in the real property transaction exclusively as the buyer's agent, exclus elyas the seller's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real pro artyor in a separate writing executed or acknowledged by the seller, the buyer, and the selling agent prior to or coincident with execution of that contract by the buyer and e seller, respectively. **(b)** As soon as practicable, the listing agent shall disclose to the seller whether the listing agent is acting in the real property transaction exclusively as e seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a s parate writing executed or acknowledged by the seller and the listing agent prior to or coincident with the execution of that contract by the seller.

**(c)** The confirmation re: uired by subdivisions (a) and (b) shall be in the following form.

______(DO NO COMPLETE, SAMPLE ONLY)______ is the agent of (check one): ☐ the seller exclusively; or ☐ both the buyer and seller.
(Name of Listing Agent)

______(DO NO COMPLETE, SAMPLE ONLY)______ is the agent of (check one): ☐ the buyer exclusively; or ☐ the seller exclusively; or
(Name of Selling Agent if ot the same as the Listing Agent) ☐ both the buyer and seller.

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14.

**2079.18** No selling agent a real property transaction may act as an agent for the buyer only, when the selling agent is also acting as the listing agent in the transaction.

**2079.19** The payment of ompensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship betw en an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compens tion or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determ native of a particular relationship.

**2079.20** Nothing in this a icle prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article i he requirements of Section 2079.14 and Section 2079.17 are complied with.

**2079.21** A dual agent shal not disclose to the buyer that the seller is willing to sell the property at a price less than the listing price, without the express written consent of the seller. A dual agent hall not disclose to the seller that the buyer is willing to pay a price greater than the offering price, without the express written consent of the buyer. This section does ot alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

**2079.22** Nothing in this a icle precludes a listing agent from also being a selling agent, and the combination of these functions in one agent does not, of itself, make that agent a dual a ent.

**2079.23** A contract betw n the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the gency with the written consent of the parties to the agency relationship.

**2079.24** Nothing in this ticle shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employe: or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article o or any breach of a fiduciary duty or a duty of disclosure.

Published and Distri uted by:
REAL ESTATE BU: NESS SERVICES, INC.
*a subsidiary of the alifornia Association of REALTORS®*
525 South Virgil Av: ue, Los Angeles, California 90020

Reviewed by _____ Date _________



Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com Untitled

**EXHIBIT 2**

CALIFORNIA ASSOCIATION OF REALTORS®

# POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER - DISCLOSURE AND CONSENT

**(C.A.R. Form PRBS, 11/14)**

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: **(a)** Broker, without the prior written consent of the Buyer, will not disclose to seller that the Buyer is willing to pay a price greater than the offered price; **(b)** Broker, without the prior written consent of the seller, will not disclose to the buyer that seller is willing to sell property at a price less than the listing price; and **(c)** other than as set forth in (a) and (b) above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.**

Seller [signature] BEAR FIGUEROA LLC Date July 1, 2017
Seller ______ Date ______
Buyer [signature] SALT FISH INC Date July 1, 2017
Buyer ______ Date ______

Real Estate Broker (Firm) FOR SALE BY OWNER CalBRE Lic # ______ Date ______
By ______ CalBRE Lic # ______ Date ______

Real Estate Broker (Firm) FOR SALE BY OWNER CalBRE Lic # ______ Date ______
By ______ CalBRE Lic # ______ Date ______

© 2014, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by ______ Date ______



TM Real Estate Brokers 1800 Palo Verde Ave # E Long Beach, CA 90815 Phone: 562.244.0093 Fax: 562.598.9846 Untitled
Tony Amer
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

**EXHIBIT 2**

CALIFORNIA ASSOCIATION OF REALTORS®

# RESIDENTIAL INCOME PROPERTY PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS

(C.A.R. Form RIPA, Revised 12/15)

**Date Prepared:** *July , 2017*

1. **OFFER:**
   A. **THIS IS AN OFFER FROM** *SALT FISH INC* ("Buyer").
   [ ] Individual(s) [ ] A Corporation, [ ] A Partnership, [X] An LLC, [ ] An LLP, [ ] Other ______
   B. **THE REAL PROPERTY** to be acquired is *10520 S. FIGUEROA ST*, situated in *Los Angeles* (City), *Los Angeles* (County), California, *90003* (Zip Code), Assessor's Parcel No. ______ ("Property").
   C. **THE PURCHASE PRICE** offered is *Two Million, Six Hundred Thousand* Dollars $ *2,600,000.00*.
   D. **CLOSE OF ESCROW** shall occur on [ ] ______ (date) (or [X] *90* Days After Acceptance).
   E. Buyer and Seller are referred to herein as the "Parties." Brokers are not Parties to this Agreement.
2. **AGENCY:**
   A. **DISCLOSURE:** The Parties each acknowledge receipt of a [X] "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).
   B. **CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:
   Listing Agent *FOR SALE BY OWNER* (Print Firm Name) is the agent of (check one): [ ] the Seller exclusively; or [X] both the Buyer and Seller.
   Selling Agent *FOR SALE BY OWNER* (Print Firm Name) (if not the same as the Listing Agent) is the agent of (check one): [ ] the Buyer exclusively; or [ ] the Seller exclusively; or [X] both the Buyer and Seller.
   C. **POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a [X] "Potential Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).
3. **FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.
   A. **INITIAL DEPOSIT:** Deposit shall be in the amount of . . . . . $ *50,000.00*
   (1) Buyer Direct Deposit: Buyer shall deliver deposit directly to Escrow Holder by electronic funds transfer, [ ] cashier's check, [X] personal check, [ ] other ______ within 3 business days after Acceptance (or ______);
   OR (2) [ ] Buyer Deposit with Agent: Buyer has given the deposit by personal check (or ______) to the agent submitting the offer (or to ______), made payable to ______. The deposit shall be held uncashed until Acceptance and then deposited with Escrow Holder within 3 business days after Acceptance (or ______).
   Deposit checks given to agent shall be an original signed check and not a copy.
   (Note: Initial and increased deposits checks received by agent shall be recorded in Broker's trust fund log.)
   B. **INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of . $ ______
   within ____ Days After Acceptance (or ______).
   If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased deposit into the liquidated damages amount in a separate liquidated damages clause (C.A.R. Form RID) at the time the increased deposit is delivered to Escrow Holder.
   C. [X] **ALL CASH OFFER:** No loan is needed to purchase the Property. This offer is NOT contingent on Buyer obtaining a loan. Written verification of sufficient funds to close this transaction IS ATTACHED to this offer or [ ] Buyer shall, within 3 (or ______) Days After Acceptance, Deliver to Seller such verification.
   D. **LOAN(S):**
   (1) **FIRST LOAN:** in the amount of . . . . . $ *2,200,000.00*
   This loan will be conventional financing or [ ] FHA, [ ] VA, [ ] Seller financing (C.A.R. Form SFA), [ ] assumed financing (C.A.R. Form AFA), [ ] subject to financing, [ ] Other ______. This loan shall be at a fixed rate not to exceed ____ % or, [ ] an adjustable rate loan with initial rate not to exceed ____ %. Regardless of the type of loan, Buyer shall pay points not to exceed ____ % of the loan amount.
   (2) [ ] **SECOND LOAN** in the amount of . . . . . $ *299,000.00*
   This loan will be conventional financing or [ ] Seller financing (C.A.R. Form SFA), [ ] assumed financing (C.A.R. Form AFA), [ ] subject to financing, [ ] Other ______. This loan shall be at a fixed rate not to exceed ____ % or, [ ] an adjustable rate loan with initial rate not to exceed ____ %. Regardless of the type of loan, Buyer shall pay points not to exceed ____ % of the loan amount.
   (3) **FHA/VA:** For any FHA or VA loan specified in 3D(1), Buyer has 17 (or ___) Days After Acceptance to Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that Buyer requests Seller to pay for or otherwise correct. Seller has no obligation to pay or satisfy lender requirements unless agreed in writing. A FHA/VA amendatory clause (C.A.R. Form FVAC) shall be a part of this transaction.
   E. **ADDITIONAL FINANCING TERMS:** ______
   F. **BALANCE OF DOWN PAYMENT OR PURCHASE PRICE** in the amount of . . . . . $ *51,000.00*
   to be deposited with Escrow Holder pursuant to Escrow Holder instructions.
   G. **PURCHASE PRICE (TOTAL):** . . . . . $ *2,600,000.00*

Buyer's Initials ( ______ )( ______ ) Seller's Initials ( ______ )( ______ )

© 2015, California Association of REALTORS®, Inc.



TM Real Estate Brokers 1800 E Verde Ave // E Long Beach, CA 90815 Phone: 562.244.0093 Fax: 562.598.9846 Untitled
Tony Amer Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

**EXHIBIT 2**

Property Address: 10: 20 S. FIGUEROA ST, Los Angeles, 90003 Date: July 1, 2017

H. **VERIFICATIO OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to paragraph 3J(1)) shall, within 3 or ___ ) **Days** After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs. ( ☐ Verification ttached.)

I. **APPRAISAL C NTINGENCY AND REMOVAL:** This Agreement is (or ☐ is NOT) contingent upon a written appraisal of the Property by a licensed c certified appraiser at no less than the purchase price. Buyer shall, as specified in paragraph 19B(3), in writing, remove the appraisal c ntingency or cancel this Agreement within **17 (or ____ ) Days** After Acceptance.

J. **LOAN TERMS:**

(1) **LOAN APP ICATIONS:** Within **3 (or ___ ) Days** After Acceptance, Buyer shall Deliver to Seller a letter from Buyer's lender or loan broker stating t at, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified paragraph 3D. If any loan specified in paragraph 3D is an adjustable rate loan, the prequalification or preapproval letter shall be b sed on the qualifying rate, not the initial loan rate. ( ☐ Letter attached.)

(2) **LOAN CON INGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Buyer's qualification for the loan(s) specified above s **a contingency** of this Agreement unless otherwise agreed in writing. If there is no appraisal contingency or the appraisal contingency ha been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation rig , pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan. Buyer's contractual obligations regarding depo t, balance of down payment and closing costs **are not contingencies** of this Agreement.

(3) **LOAN CON INGENCY REMOVAL:**
Within **21 (or _ _ ) Days** After Acceptance, Buyer shall, as specified in paragraph 19, in writing, remove the loan contingency or cancel this Agreemen If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.

(4) ☐ **NO LOA CONTINGENCY:** Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a r sult Buyer does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

(5) **LENDER L MITS ON BUYER CREDITS:** Any credit to Buyer, from any source, for closing or other costs that is agreed to by the Parties ("Contr ctual Credit") shall be disclosed to Buyer's lender. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less an the Contractual Credit, then (i) the Contractual Credit shall be reduced to the Lender Allowable Credit, and (ii) in the absence of a se arate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the differen between the Contractual Credit and the Lender Allowable Credit.

(6) **ASSUMED R SUBJECT TO FINANCING:** Seller represents that Seller is not delinquent on any payments due on any loans. If the Property is acq ired subject to an existing loan, Buyer and Seller are advised to consult with legal council regarding the ability of an existing lender call the loan due, and the consequences thereof.

K. **BUYER STATE FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including but not limited to, as applicable, a cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price nd to sell to Buyer in reliance on Buyer's covenant concerning financing. Buyer shall pursue the financing specified in this Agreemen Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in the Agreement and he availability of any such alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow a specified in this Agreement.

4. **SALE OF BUYER' PROPERTY:**

A. This Agreemen and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer.

OR B. ☐ This Agreem nt and Buyer's ability to obtain financing are contingent upon the sale of property owned by Buyer as specified in the attached adden um (C.A.R. Form COP).

5. **ADDENDA AND A VISORIES:**

A. ADDENDA:
☐ Addendum # (C.A.R. Form ADM)
☐ Back Up Offe Addendum (C.A.R. Form BUO)
☒ Court Confirmation Addendum (C.A.R. Form CCA)
☐ Septic, Well nd Property Monument Addendum (C.A.R. Form SWPI)
☐ Short Sale A endum (C.A.R. Form SSA)
☐ Other

B. BUYER AND S LLER ADVISORIES:
☒ Buyer's Inspection Advisory (C.A.R. Form BIA)
☐ Probate Advi ory (C.A.R. Form PA)
☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
☐ Trust Adviso (C.A.R. Form TA)
☐ REO Advisory (C.A.R. Form REO)
☐ Short Sale In rmation and Advisory (C.A.R. Form SSIA)
☐ Other

6. **OTHER TERMS:** ______

7. **ALLOCATION OF OSTS**

A. **INSPECTIONS, REPORTS AND CERTIFICATES:** Unless otherwise agreed, in writing, this paragraph only determines who is to pay for th inspection, test, certificate or service ("Report") mentioned; it **does not determine who is to pay for any work recommended r identified in the Report.**

(1) ☒ Buyer ☒ eller shall pay for a natural hazard zone disclosure report, including tax ☐ environmental ☐ Other: ______ prepared by *Disclosure Source*

(2) ☐ Buyer ☐ eller shall pay for the following Report ______ prepared by *NY RELIABLE*

(3) ☐ Buyer ☐ eller shall pay for the following Report ______ prepared by ______

Buyer's Initials ( ______ )( ______ ) Seller's Initials ( ______ )( ______ )


Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com Untitled

**EXHIBIT 2**

Property Address: *105 0 S. FIGUEROA ST, Los Angeles, 90003* Date: *July 1, 2017*

**B. GOVERNMENT RE UIREMENTS AND RETROFIT:**

(1) ☐ Buyer ☐ eller shall pay for smoke alarm and carbon monoxide device installation and water heater bracing, if required by Law. Prior to Clo e Of Escrow ("COE"), Seller shall provide Buyer written statement(s) of compliance in accordance with state and local Law, unless Seller is exempt.

(2) (i) ☒ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government inspections and reports if required as condition of closing escrow under any Law.

(ii) ☒ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards required as a condition closing escrow under any Law, whether the work is required to be completed before or after COE.

(iii) Buyer s all be provided, within the time specified in paragraph 19A, a copy of any required government conducted or point-of-sale inspect on report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

(3) ☒ Buyer ☐ Seller shall pay for installation of approved fire extinguisher(s), sprinkler(s), and hose(s), if required by Law, which shall be installed pri to Close Of Escrow. Prior to Close Of Escrow, Seller shall provide Buyer a written statement of compliance, if required by Law.

(4) ☒ Buyer ☐ Seller shall pay for installation of drain cover and anti-entrapment device or system for any pool or spa meeting the minimum re uirements permitted by the U.S. Consumer Products and Safety Commission.

**C. ESCROW AND TITLE:**

(1) (a) ☒ Buyer ☒ Seller shall pay escrow fee *50/50*

(b) Escrow Holder shall be

(c) The Par es shall, within **5 (or ___ ) Days** After receipt, sign and return Escrow Holder's general provisions.

(2) (a) ☒ Buyer ☐ Seller shall pay for **owner's** title insurance policy specified in paragraph 18E

(b) Owner's title policy to be issued by

(Buyer shal pay for any title insurance policy insuring Buyer's **lender**, unless otherwise agreed in writing.)

**D. OTHER COSTS**

(1) ☒ Buyer ☐ Seller shall pay County transfer tax or fee

(2) ☒ Buyer ☐ Seller shall pay City transfer tax or fee

(3) ☐ Buyer ☐ Seller shall pay Homeowners' Association ("HOA") transfer fee

(4) Seller shall ay HOA fees for preparing documents required to be delivered by Civil Code §4525.

(5) ☐ Buyer ☐ eller shall pay HOA fees for preparing all documents other than those required by Civil Code §4525.

(6) Buyer to pa for any HOA certification fee.

(7) ☒ Buyer ☐ eller shall pay for any private transfer fee

(8) ☐ Buyer ☐ eller shall pay for

(9) ☐ Buyer ☐ eller shall pay for

(10) ☒ Buyer ☐ Seller shall pay for the cost, not to exceed $ *1,000.00* , of a ☐ standard ☐ upgraded one-year home arranty plan, issued by *Click here to select your Service Provider* , with the following optional cov rages: ☐ Air Conditioner ☐ Pool/Spa ☐ Other:

Buyer is in rmed that home warranty plans have many optional coverages in addition to those listed above. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.

**OR ☐ Buyer w ives the purchase of a home warranty policy. Nothing in this paragraph precludes Buyer's purchasing a home wa ranty policy during the term of the Agreement.**

**8. ITEMS INCLUDED N AND EXCLUDED FROM SALE:**

**A. NOTE TO BUY R AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are **not** included in the purchase price r excluded from the sale unless specified in paragraph 8B, C or D.

**B. ITEMS INCLUD ED IN SALE:**

(1) All EXISTIN fixtures and fittings that are attached to the Property;

(2) EXISTING ectrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power syst ms, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television a tennas, satellite dishes, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground la dscaping, trees/shrubs, water features and fountains, water softeners, water purifiers and security systems/alarms.

(3) Seller repr sents that all items included in the purchase price, unless otherwise specified, are owned by Seller, except (i) *LAUNDRY OOM EQUIPMENT WASHER AND DRYER* and (ii) the items and systems identified pursuant to 8B(4).

(4) **LEASED O LIENED ITEMS AND SYSTEMS:** Seller shall, within the time specified in paragraph 19A, (i) disclose to Buyer if any item or system pecified in paragraph 8B or otherwise included in the sale is leased, or not owned by Seller, or specifically subject to a lien or other e cumbrance, and (ii) Deliver to Buyer all written materials (such as lease, warranty, etc.) concerning any such item. Buyer's ability assume any such lease, or willingness to accept the Property subject to any such lien or encumbrance, is a contingency in vor of Buyer and Seller as specified in paragraph 19B and C.

(5) Except as therwise specified or disclosed, all items included shall be transferred free and clear of liens and encumbrances and without Seller w rranty regardless of value.

(6) A complete nventory of all personal property of Seller currently used in the operation of the Property and included in the purchase price shall be d ivered to Buyer within the time specified in paragraph 19.

(7) Seller shall eliver title to the personal property by Bill of Sale, free of all liens and encumbrances, and without warranty of condition.

(8) As addition l security for any note in favor of Seller for any part of the purchase price, Buyer shall execute a UCC-1 Financing Statement to b filed with the Secretary of State, covering the personal property included in the purchase, replacement thereof, and insurance proc eds.

**C. ITEMS EXCLU ED FROM SALE:** *WASHER AND DRYER*

**D. OTHER ITEMS** Existing integrated phone and home automation systems, including necessary components such as intranet and Internet-connec ed hardware or devices, control units (other than non-dedicated mobile devices, electronics and computers) and applicable softw re, permissions, passwords, codes and access information, are (☐ are NOT) included in the sale.

Buyer's Initials ( ___ )( ___ ) Seller's Initials ( ___ )( ___ )



Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com Untitled

Property Address: 10? ?0 S. FIGUEROA ST, Los Angeles, 90003 Date: July 1, 2017

9. **SECURITY DEPOS TS:** Security deposits, if any, to the extent they have not been applied by Seller in accordance with any rental agreement and current Law, sh ll be transferred to Buyer on Close Of Escrow. Seller shall notify each tenant, in compliance with the California Civil Code.

10. **CLOSING AND PO SESSION:**

A. Buyer intends (( [X] does not intend) to occupy any unit in the Property as Buyer's primary residence.

B. **Seller-occupie or vacant property:** Possession shall be delivered to Buyer: (i) [ ] at 6 PM or (_____ [ ] AM/ [ ] PM) on the date of Close Of Escrov ; (ii) [ ] no later than ___ calendar days after Close Of Escrow; or (iii) [ ] at ___ [ ] AM/ [ ] PM on ________.

C. **Seller Remaini g in Possession After Close Of Escrow:** If Seller has the right to remain in possession after Close Of Escrow, (i) the Parties are adv ed to sign a separate occupancy agreement such as [ ] C.A.R. Form SIP, for Seller continued occupancy of less than 30 days, [ ] C.A R. Form RLAS for Seller continued occupancy of 30 days or more; and (ii) the Parties are advised to consult with their insurance and gal advisors for information about liability and damage or injury to persons and personal and real property; and (iii) Buyer is advise to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.

D. **Tenant occupi d units:** Possession and occupancy, subject to the rights of tenants under existing leases, shall be delivered to Buyer on Close Of Es ow.

E. At Close Of Esc ow: **(i)** Seller assigns to Buyer any assignable warranty rights for items included in the sale; and **(ii)** Seller shall Deliver to Buyer availab e Copies of any such warranties. Brokers cannot and will not determine the assignability of any warranties.

F. At Close Of Esc ow, unless otherwise agreed in writing, Seller shall provide keys, passwords, codes and/or means to operate all locks, mailboxes, secu ity systems, alarms, home automation systems and intranet and Internet-connected devices included in the purchase price, and gara e door openers. If the Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposi o the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

11. **STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**

A. **LEAD-BASED AINT HAZARD DISCLOSURES:**

(1) Seller shall, within the time specified in paragraph 19, deliver to Buyer, if required by Law, Federal Lead-Based Paint Disclosures and pamph t ("Lead Disclosures"). If the Lead Disclosures are delivered to Buyer after the offer is Signed, Buyer shall have the right to canc el this Agreement within **3 Days** After Delivery in person, or **5 Days** After delivery by deposit in the mail, by giving written notic of cancellation to Seller or Seller's agent. (Lead Disclosures sent by mail must be sent certified mail or better.)

(2) Buyer shall, within the time specified in paragraph 19, return a Signed Copy of the Lead Disclosure to Seller.

B. **NATURAL ANI ENVIRONMENTAL HAZARDS:** Within the time specified in paragraph 19, Seller shall, if required by Law: **(i)** deliver to Buyer earthqua e guides (and questionnaire) and environmental hazards booklet; and **(ii)** even if exempt from the obligation to provide a NHD, disclos if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area: Very High Fire Hazard Zone; State Fir Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provid any other information required for those zones.

C. **WITHHOLDING TAXES:** Within the time specified in paragraph 19A, to avoid required withholding, Seller shall Deliver to Buyer or qualified substit le, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law (C.A.R. Form AS or QS).

D. **MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.megansla v.ca.gov.** Depending on an offender's criminal history, this information will include either the address at which the offender reside or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this web te. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspecti n contingency period. Brokers do not have expertise in this area.)

E. **NOTICE REGA DING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that inform tion about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipelin Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npr s.phmsa.dot.gov/.** To seek further information about possible transmission pipelines near the Property, you may contact your lo al gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and count on the NPMS Internet Web site.

F. **CONDOMINIU PLANNED DEVELOPMENT DISCLOSURES:**

**(1) SELLER H S: 7 (or ___ ) Days** After Acceptance to disclose to Buyer whether the Property is a condominium, or is located in a planned develo nent or other common interest subdivision (C.A.R. Form SPQ or ESD).

(2) If the Prope ty is a condominium or is located in a planned development or other common interest subdivision, Seller has **3 (or ___ ) Day** After Acceptance to request from the HOA (C.A.R. Form HOA1): **(i)** Copies of any documents required by Law; **(ii)** disclosure o any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of desi nated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; and ) the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). Seller shall itemize and Deli er to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosure is a contingency of this Agreement as specified in paragraph 19B(3). The Party specified in paragraph 7, as directed by escrow, shal deposit funds into escrow or direct to HOA or management company to pay for any of the above.

12. **RESIDENTIAL 1-4 PROPERTIES:**

A. Seller shall, with n the time specified in paragraph 19A, Deliver to Buyer: (i) if required by Law, a fully completed: Federal Lead-Based Paint Disclosure (C.A.R. Form FLD) and pamphlet ("Lead Disclosures"); and **(ii)** unless exempt, fully completed disclosures or notices required by sec ons 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of re ease of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regardin the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of in lustrial use and military ordnance location (C.A.R. Form SPQ or ESD).

B. Any Statutory Di closure required by this paragraph is considered fully completed if Seller has answered all questions and completed and signed the Selle section(s) and the Listing Agent, if any, has completed and signed the Listing Broker section(s), or, if applicable, Agent Visual Inspectio Disclosure (C.A.R. Form AVID). Nothing stated herein relieves a Buyer's Broker, if any, from the obligation to (i)

Buyer's Initials ( ___ )( ___ ) Seller's Initials ( ___ )( ___ )


Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com Untitled

conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or (ii) complete any sections on all disclosures required to be completed by Buyer's Broker.

**C.** **Note to Buyer and Seller:** Waiver of Statutory and Lead Disclosures is prohibited by Law.

**D.** Within the time specified in paragraph 19A, **(i)** Seller, unless exempt from the obligation to provide a TDS, shall, within the time specified in paragraph 19A, complete and provide Buyer with a Seller Property Questionnaire (C.A.R. Form SPQ) **(ii)** if Seller is not required to provide a TDS, Seller shall complete and provide Buyer with a Exempt Seller Disclosure (C.A.R. Form ESD).

**E.** Buyer shall, within the time specified in paragraph 19B(1), return Signed Copies of the Statutory, Lead and other disclosures to Seller.

**F.** In the event Seller or Listing Broker, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies** of which Buyer is otherwise aware, or which are **disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.**

**G.** If any disclosure or notice specified in paragraph 12A, or subsequent or amended disclosure or notice is Delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within **3 Days** After Delivery in person, or **5 Days** After Delivery by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent.

**13. SELLER DOCUMENTATION AND ADDITIONAL DISCLOSURE: Within the time specified in paragraph 19, Seller shall disclose, make available or Deliver, as applicable, to Buyer the following information.**

**A.** **RENTAL/SERVICE AGREEMENTS:** Seller shall make available to Buyer for inspection and review: **(i)** all current leases, rental agreements, service contracts and other agreements pertaining to the operation of the Property; **(ii)** a rental statement including names of tenants, rental rates, period of rental, date of last rent increase, security deposits, rental concessions, rebates or other benefits, if any, and a list of delinquent rents and their duration. Seller represents that no tenant is entitled to any rebate, concession, or other benefit, except as set forth in these documents. Seller represents that the documents to be furnished are those maintained in the ordinary and normal course of business.

**B.** **INCOME AND EXPENSE STATEMENTS:** Seller shall make available to Buyer the books and records for the Property, including a statement of income and expense for the 12 months preceding Acceptance. Seller represents that the books and records are those maintained in the ordinary and normal course of business, and used by Seller in the computation of federal and state income tax returns.

**C.** ☐ **TENANT ESTOPPEL CERTIFICATES:** (If checked) Seller shall Deliver to Buyer tenant estoppel certificates (C.A.R. Form TEC) completed by Seller or Seller's agent, and signed by tenants, acknowledging: **(i)** that tenants' rental or lease agreements are unmodified and in full force and effect (or if modified, stating all such modifications); **(ii)** that no lessor defaults exist; and **(iii)** stating the amount of any prepaid rent or security deposit.

**D.** **SURVEY, PLANS, AND ENGINEERING DOCUMENTS:** Seller shall, at no cost to Buyer, Deliver to Buyer Copies of surveys, plans, specifications, and engineering documents, if any, prepared on Seller's behalf or in Seller's possession.

**E.** **PERMITS:** If in Seller's possession, Seller shall Deliver to Buyer Copies of all permits and approvals concerning the Property, obtained from any governmental entity, including, but not limited to, certificates of occupancy, conditional use permits, development plans, and licenses and permits pertaining to the operation of the Property.

**F.** **STRUCTURAL MODIFICATIONS:** Seller shall disclose to Buyer in writing any known structural additions or alterations to, or the installation, alteration, repair or replacement of, significant components of the structure(s) upon the Property.

**G.** **SELLER REPRESENTATION:** Seller represents that Seller has no actual knowledge: **(i)** of any current pending lawsuit(s), investigation(s), inquiry(ies), action(s), or other proceeding(s) affecting the Property or the right to use and occupy it; **(ii)** of any unsatisfied mechanic's or materialman lien(s) affecting the Property; and **(iii)** that any tenant of the Property is the subject of a bankruptcy. If Seller receives any such notice prior to Close Of Escrow, Seller shall immediately notify Buyer.

**H.** **GOVERNMENTAL COMPLIANCE:**

**(1)** Seller shall disclose to Buyer any improvements, additions, alterations, or repairs to the Property made by Seller, or known to Seller to have been made, without required governmental permits, final inspections, and approvals.

**(2)** Seller shall disclose to Buyer if Seller has actual knowledge of any notice of violations of Law filed or issued against the Property.

**14. SUBSEQUENT DISCLOSURES:** In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer, Seller shall promptly Deliver a subsequent or amended disclosure or notice, in writing, covering those items. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies** of which Buyer is otherwise aware, or which are **disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.**

**15. CHANGES DURING ESCROW:**

**A.** Prior to Close Of Escrow, Seller may engage in the following acts ("Proposed Changes"), subject to Buyer's rights in paragraph 15B: **(i)** rent or lease any vacant unit or other part of the premises; **(ii)** alter, modify or extend any existing rental or lease agreement; **(iii)** enter into, alter, modify or extend any service contract(s); or **(iv)** change the status of the condition of the Property.

**B.** **(1)** At least 7 (or ____) **Days** Prior to any Proposed Changes, Seller shall Deliver written notice to Buyer of such Proposed Changes.

**(2)** Within 5 (or ___) Days After receipt of such notice, Buyer, in writing, may give Seller notice of Buyer's objection to the Proposed Changes in which case Seller shall not make the Proposed Changes.

**16. CONDITION OF PROPERTY:** Unless otherwise agreed in writing: **(i)** the Property is sold (a) "AS-IS" in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and **(iii)** all debris and personal property not included in the sale shall be removed by Close Of Escrow.

**A.** Seller shall, within the time specified in paragraph 19A; (i) DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, (ii) disclose the number of units on the Property which have been legally approved, if known by Seller and (iii) make any and all other disclosures required by Law.

**B.** Buyer has the right to conduct Buyer Investigations of the property and, as specified in paragraph 19B, based upon information discovered in those investigations: (i) cancel this Agreement; or (ii) request that Seller make Repairs or take other action.

**C.** **Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.**

**17. BUYER'S INVESTI ATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

**A.** Buyer's accepta ce of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and aragraph 19B. Within the time specified in paragraph 19B(1), Buyer shall have the right, at Buyer's expense unless otherwise agree , to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to, the right to: ) inspect for lead-based paint and other lead-based paint hazards: **(ii)** inspect for wood destroying pests and organisms. Any inspection r wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building a d attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owne s of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common terest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT i clude common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into s ctions for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2); **(iii)** review the r gistered sex offender database; **(iv)** confirm the insurability of Buyer and the Property including the availability and cost of flood and fire in urance; **(v)** review and seek approval of leases that may need to be assumed by Buyer; and **(vi)** satisfy Buyer as to any matter specified n the attached Buyer's Inspection Advisory (C.A.R. Form BIA). Without Seller's prior written consent, Buyer shall neither make nor cause o be made: (i) invasive or destructive Buyer Investigations except for minimally invasive testing required to prepare a Pest Control Report; r **(ii)** inspections by any governmental building or zoning inspector or government employee, unless required by Law.

**B.** Seller shall ma e the Property available for all Buyer Investigations. Buyer shall **(i)** as specified in paragraph 19B, complete Buyer Investigations a d either remove the contingency or cancel this Agreement, and **(ii)** give Seller, at no cost, complete Copies of all such Investigation re orts obtained by Buyer, which obligation shall survive the termination of this Agreement.

**C.** Seller shall hav water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available Buyer.

**D. Buyer indemni and seller protection for entry upon property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising om Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buye shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable nsurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations o work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller t recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's directio Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**18. TITLE AND VESTI G:**

**A.** Within the time ecified in paragraph 19, Buyer shall be provided a current preliminary title report ("Preliminary Report"). The Preliminary Report is only a offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the Preliminary eport and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 19B. The company providi g the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks o other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities. Seller s all within 7 Days After Acceptance, give Escrow Holder a completed Statement of Information.

**B.** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whethe of record or not, as of the date of Acceptance except for: **(i)** monetary liens of record (which Seller is obligated to pay off) unless Buye is assuming those obligations or taking the Property subject to those obligations; and **(ii)** those matters which Seller has agreed to re nove in writing.

**C.** Within the time ecified in paragraph 19A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

**D.** At Close Of Es ow. Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate r of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in B yer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQU NCES. CONSULT AN APPROPRIATE PROFESSIONAL.

**E.** Buyer shall rece e a Standard Coverage Owner's CLTA policy of title insurance. An ALTA policy or the addition of endorsements may provide greater overage for Buyer. A title company, at Buyer's request, can provide information about the availability, desirability, coverage, and c st of various title insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, l yer shall instruct Escrow Holder in writing and shall pay any increase in cost.

**19. TIME PERIODS; R MOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified c changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Sell r must be exercised in good faith and in writing (C.A.R. Form CR or CC).**

**A. SELLER HAS: ' (or __ ) Days** After Acceptance to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible nder paragraphs 5A, 6, 7, 8B(4), 11A, B, C, and F, 12A and D, 13, 16A, and 18A. Buyer after first Delivering to Seller a Notice to Sel er to Perform (C.A.R. Form NSP) may cancel this Agreement if Seller has not Delivered the items within the time specified.

**B. (1) BUYER HA 17 (or __ ) Days** After Acceptance, unless otherwise agreed in writing, to:
(i) complete all Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to paragraph 8 (4) and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and (ii) Deli r to Seller Signed Copies of Statutory and Lead Disclosures and other disclosures Delivered by Seller in accordance with paragra h 12A.

**(2)** Within the ti e specified in paragraph 19B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C. R. Form RR). Seller has no obligation to agree to or respond to (C.A.R. Form RRRR) Buyer's requests.

**(3)** By the end c the time specified in paragraph 19B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller a removal of th applicable contingency or cancellation (C.A.R. Form CR or CC) of this Agreement. However, if any report, disclosure or informatio for which Seller is responsible is not Delivered within the time specified in paragraph 19A, then Buyer has **5 (or ___ ) Days After D** livery of any such items, or the time specified in paragraph 19B(1), whichever is later, to Deliver to Seller a removal of the applicabl contingency or cancellation of this Agreement.

Buyer's Initials ( ___ )( ___ ) Seller's Initials ( ___ )( ___ )

(4) **Continuatic ı of Contingency:** Even after the end of the time specified in paragraph 19B(1) and before Seller cancels, if at all, pursuant to ɔaragraph 19C, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement l ased on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel tl ; Agreement pursuant to paragraph 19C(1).

C. **SELLER RIGHT TO CANCEL:**

(1) **Seller righ: to Cancel; Buyer Contingencies:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of tl e applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform ( C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fe is incurred by Buyer.

(2) **Seller right o Cancel; Buyer Contract Obligations:** Seller, after first delivering to the Buyer a NBP, may cancel this Agreement if, by the time : pecified in this Agreement, Buyer does not take the following action(s): **(i)** Deposit funds as required by paragraph 3A or 3B or if tl e funds deposited pursuant to paragraph 3A or 3B are not good when deposited; **(ii)** Deliver a notice of FHA or VA costs or terr s as required by paragraph 3D(3) (C.A.R. Form FVA); **(iii)** Deliver a letter as required by paragraph 3J(1); **(iv)** Deliver verification : s required by paragraph 3C or 3H or if Seller reasonably disapproves of the verification provided by paragraph 3C or 3H; **(v)** In w iting assume or accept leases or liens specified in 8B4; **(vi)** Return Statutory and Lead Disclosures as required by paragraph 1 IA(2) and 12E; or **(vii)** Sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs B and 30B; or **(viii)** Provide evidence of authority to sign in a representative capacity as specified in paragraph 28. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

D. **NOTICE TO BUYER OR SELLER TO PERFORM:** The NBP or NSP shall: **(i)** be in writing; **(ii)** be signed by the applicable Buyer or Seller; and **(iii)** give the other Party at least **2(or ___ )** Days After Delivery (or until the time specified in the applicable paragraph, whichever occu ; last) to take the applicable action. A NBP or NSP may not be Delivered any earlier than **2 Days** Prior to the expiration of the applicable time for the other Party to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 19.

E. **EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise speci ed in writing, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of reports and other applic able information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; an **(iii)** assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation rigl , or for the inability to obtain financing.

F. **CLOSE OF ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Bu er or Seller must first Deliver to the other Party a demand to close escrow (C.A.R. Form DCE). The DCE shall: **(i)** be signed by the a plicable Buyer or Seller: and **(ii)** give the other Party at least **3 (or _____ ) Days** After Delivery to close escrow. A DCE may not be Deli ered any earlier than **3 Days** Prior to the scheduled close of escrow.

G. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the part entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors fo services and products provided during escrow. Except as specified below, **release of funds will require mutual Signed releas instructions from the Parties, judicial decision or arbitration award.** If either Party fails to execute mutual instructions to c ncel escrow, one Party may make a written demand to Escrow Holder for the deposit (C.A.R. Form BDRD or SDRD). Escrow Holder, upon receipt, shall promptly deliver notice of the demand to the other Party. If, within 10 Days After Escrow Holder's notice, the othe Party does not object to the demand, Escrow Holder shall disburse the deposit to the Party making the demand. If Escrow Holder omplies with the preceding process, each Party shall be deemed to have released Escrow Holder from any and all claims or liabilit related to the disbursal of the deposit. Escrow Holder, at its discretion, may nonetheless require mutual cancellation instructions. **A l arty may be subject to a civil penalty of up to $1,000 for refusal to sign cancellation instructions if no good faith dispute e sts as to who is entitled to the deposited funds (Civil Code §1057.3).**

20. **REPAIRS:** Repairs hall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense m y be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permi , inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance co nparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain invoices and paid receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

21. **ENVIRONMENTAL HAZARD CONSULTATION:** Buyer and Seller acknowledge: **(i)** Federal, state, and local legislation impose liability upon existing and ɔrmer owners and users of real property, in applicable situations, for certain legislatively defined, environmentally hazardous substanc es; **(ii)** Broker(s) has/have made no representation concerning the applicability of any such Law to this transaction or to Buyer or to Seller, except as otherwise indicated in this Agreement; **(iii)** Broker(s) has/have made no representation concerning the existence, testing, c scovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affect g the Property; and **(iv)** Buyer and Seller are each advised to consult with technical and legal experts concerning the existence, testing, c scovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecti g the Property.

22. **AMERICANS WITH DISABILITIES ACT:** The Americans With Disabilities Act ("ADA") prohibits discrimination against individuals with disabilities. The AD affects almost all commercial facilities and public accommodations. Residential properties are not typically covered by the ADA, but may b e governed by its provisions if used for certain purposes. The ADA can require, among other things, that buildings be made readily acces ible to the disabled. Different requirements apply to new construction, alterations to existing buildings, and removal of barriers in existing buildings. Compliance with the ADA may require significant costs. Monetary and injunctive remedies may be incurred if the Property is no in compliance. A real estate broker does not have the technical expertise to determine whether a building is in compliance with ADA requirements, or to advise a principal on those requirements. Buyer and Seller are advised to contact an attorney, contractor, architect engineer or other qualified professional of Buyer or Seller's own choosing to determine to what degree, if any, the ADA impacts that principal or this transaction.

Buyer's Initials ( _____ )( _____ ) Seller's Initials ( _____ )( _____ )

**23. FINAL VERIFICAT ON OF CONDITION:** Buyer shall have the right to make a final verification of the Property within 5 (or __ )**Days** Prior to Close Of Escrow. N T AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to paragraph 16; **(ii)** Repairs have been ompleted as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

**24. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and pro ated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, an emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that a e now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello- Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Pro perty will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: **(i)** for periods after Close Of Esc ow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX B LLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

**25. SUCCESSORS AN D ASSIGNS:** This Agreement shall be binding upon, and inure to the benefit of, Buyer and Seller and their respective successors and ass gns, except as otherwise provided herein.

**26. COPIES:** Seller an Buyer each represent that Copies of all reports, documents, certificates, approvals and other documents that are furnished to the ot er are true, correct and unaltered Copies of the original documents, if the originals are in the possession of the furnishing party.

**27. BROKERS:**

**A. COMPENSATI N:** Seller or Buyer, or both, as applicable, agrees to pay compensation to Broker as specified in a separate written agreement betw een Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specif ed in the agreement between Broker and that Seller or Buyer.

**B. SCOPE OF DU TY:** Buyer and Seller acknowledge and agree that Broker: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness o inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an insp ection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in com mon areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or re known to Broker; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** S hall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advert isements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a tran saction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the kn owledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insura nce, title and other desired assistance from appropriate professionals.

**C. BROKERAGE:** Neither Buyer nor Seller has utilized the services of, or for any other reason owes compensation to, a licensed real estate broker (in dividual or corporate), agent, finder, or other entity, other than as specified in this Agreement, in connection with any act relating to the P operty, including, but not limited to, inquiries, introductions, consultations and negotiations leading to this Agreement. Buyer and Selle each agree to indemnify and hold the other, the Brokers specified herein and their agents, harmless from and against any costs, expe ses or liability for compensation claimed inconsistent with the warranty and representation in this paragraph.

**28. REPRESENTATIVE CAPACITY:** If one or more Parties is signing the Agreement in a representative capacity and not for him/herself as an individual then that Party shall so indicate in paragraph 40 or 41 and attach a Representative Capacity Signature Disclosure (C.A.R. Form RCSD). Wherever e signature or initials of the representative identified in the RCSD appear on the Agreement or any related documents, it shall be deemed o be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in representative capacity (i) represents that the entity for which that party is acting already exists and (ii) shall Deliver to the other Party and Escrow Holder, within 3 Days After Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolutior or formation documents of the business entity).

**29. JOINT ESCROW I STRUCTIONS TO ESCROW HOLDER:**

**A. The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to E scrow Holder,** which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructi ns to close the escrow: paragraphs 1, 3, 4B, 5A, 6, 7, 9, 11C, 18, 19G, 24, 27A, 28, 29, 35, 38, 39, 40, 41 and paragraph D of he section titled Real Estate Brokers on page 11. If a Copy of the separate compensation agreement(s) provided for in paragraph 27A, or paragraph D of the section titled Real Estate Brokers on page 11 is deposited with Escrow Holder by Broker, Escrow Holder shall ac ept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in uch agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the nformation of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder and will execute such provisions within the time specified in paragraph 7C( (c). To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to th duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, shall pay to Escrow Holder HOA or HOA management company or others any fee required by paragraphs 7, 11 or elsewhere in the Agreement.

**B.** A Copy of this A greement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** After Acceptance (or ____________ ______________ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement s originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected b whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title company hen received from Seller. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under paragraph 11G, Escrow Holder shall deliver to Buyer a Qualified Substitute statement that complies with federal Law.

Buyer's Initials ( ________ )( ________ ) Seller's Initials ( ________ )( ________ )



Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com Untitled

Property Address: *10! !0 S. FIGUEROA ST, Los Angeles, 90003* Date: *July 1, 2017*

**C.** Brokers are a p: ‹ty to the escrow for the sole purpose of compensation pursuant to paragraph 27A and paragraph D of the section titled Real Estate Br( kers on page 11. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 27A, and irrevocably instr ct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation ag( ement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall rel: ase and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation p rsuant to this Agreement.

**D.** Upon receipt, E crow Holder shall provide Seller and Seller's Broker verification of Buyer's deposit of funds pursuant to paragraph 3A and 3B. Once E: scrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify all Brokers: (i) if Buyer's initial or any ad: tional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if uyer and Seller instruct Escrow Holder to cancel escrow.

**E.** A Copy of any : mendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder ‹ ithin **3 Days** After mutual execution of the amendment.

**30. REMEDIES FOR B YER'S BREACH OF CONTRACT:**

**A. Any clause ad led by the Parties specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase in violation of this Agreement shall be deemed invalid unless the clause indepen lently satisfies the statutory liquidated damages requirements set forth in the Civil Code.**

**B. LIQUIDATED D AMAGES: If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the eposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then e amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of fun s will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT TIM : OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION IN ORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM RID).**

Buyer's Initials ____ / ____ Seller's Initials ____ / ____

**31. DISPUTE RESOLU ION:**

**A. MEDIATION:** T e Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, b: ore resorting to arbitration or court action through the C.A.R. Consumer Mediation Center (www. consumermedi ition.org) or through any other mediation provider or service mutually agreed to by the Parties. The Parties **also agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the disp e or claim is presented to the Broker.** Mediation fees. if any, shall be divided equally among the Parties involved. If, for any dispute r claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediati n, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled : recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION A PLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. **Exclusions from this mediation agreement are pecified in paragraph 31C.**

**B. ARBITRATIO OF DISPUTES: The Parties agree that any dispute or claim in Law or equity arising between them out of this A reement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, bindi g arbitration. The Parties also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agre to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The bitrator shall be a retired judge or justice, or an attorney with at least 5 years of transactional real estate Law ex perience, unless the parties mutually agree to a different arbitrator. The Parties shall have the right to discovery in ccordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) ay be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by e Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 31C.**

**"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTER S INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDE BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LIT GATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDIC AL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITR ATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PRO VISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CI L PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

**"WE HAV READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MAT ERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

Buyer's Initials ____ / ____ Seller's Initials ____ / ____

**C. ADDITIONAL M EDIATION AND ARBITRATION TERMS:**

**(1) EXCLUSIO S: The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other ac ion or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §298 (ii) an unlawful detainer action; and (iii) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court.**

**(2) PRESERVA ION OF ACTIONS: The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording c a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filin of a mechanic's lien.**

(3) **BROKERS: Brokers shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) p rticipating in mediation or arbitration shall not be deemed a party to the Agreement.**

32. **SELECTION OF S ERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), wheth r referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

33. **MULTIPLE LISTIN SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terr s of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the informati n on terms approved by the MLS.

34. **ATTORNEY FEES:** n any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to r asonable attorneys fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 31A.

35. **ASSIGNMENT:** Bu er shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the written consent of Seller. Such con ent shall not be unreasonably withheld unless otherwise agreed in writing. Any total or partial assignment shall not relieve Buyer of Bu er's obligations pursuant to this Agreement unless otherwise agreed in wiring by Seller (C.A.R. Form AOAA).

36. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

37. **TERMS AND CON TIONS OF OFFER:**
This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph s incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counter offer or addendum. If at leas t one but not all Parties initial. a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property fo sale and to accept any other offer at any time prior to notification of Acceptance. Buyer has read and acknowledges receipt of a Copy o the offer and agrees to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer m y be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, includi g any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

38. **TIME OF ESSENC ; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. I terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is eld to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified this Agreement shall be interpreted and disputes shall be resolved in accordance wth the Laws of the State of California. **Neither his Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by uyer and Seller.**

39. **DEFINITIONS:** As u ed in this Agreement:
   A. **"Acceptance"** neans the time the offer or final counter offer is accepted in writing by a Party and is delivered to and personally received by the ther Party or that Party's authorized agent in accordance with the terms of this offer or a final counter offer.
   B. **"Agreement"** eans this document and any counter offers and any incorporated addenda. collectively forming the binding agreement betw en the Parties. Addenda are incorporated only when Signed by all Parties.
   C. **"C.A.R. Form"** neans the most current version of the specific form referenced or another comparable form agreed to by the parties.
   D. **"Close Of Escr w" or "COE"** means the date the grant deed, or other evidence of transfer of title, is recorded.
   E. **"Copy"** means opy by any means including photocopy, NCR, facsimile and electronic.
   F. **"Days"** means calendar days. However, after Acceptance, the last **Day** for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.
   G. **"Days After"** m ans the specified number of calendar days after the occurrence of the event specified. not counting the calendar date on which the spe cified event occurs, and ending at 11:59 PM on the final day.
   H. **"Days Prior"** m eans the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which th specified event is scheduled to occur.
   I. **"Deliver", "Del vered" or "Delivery"**, unless otherwise specified in writing, means and shall be effective upon: personal receipt by Buyer or Seller the individual Real Estate Licensee for that principal as specified in the section titled Real Estate Brokers on page11, regardless of the method used (i.e., messenger, mail, email, fax, other).
   J. **"Electronic Co y" or "Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the know edge and consent of the other Party.
   K. **"Law"** means a y law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judic l or executive body or agency.
   L. **"Repairs"** mean any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agree nent.
   M. **"Signed"** mean either a handwritten or electronic signature on an original document, Copy or any counterpart.

40. **EXPIRATION OF O FER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless the offer is Signed by Seller and a Cop of the Signed offer is personally received by Buyer, or by ______________ ______________, who is authorized to re eive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or by ______ ☐ AM/ ☐ PM, on ______________ (date)).

☐ One or more Buyer is signing the Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacit Signature Disclosure (C.A.R. Form RCSD-B) for additional terms.

Date ______ B YER ______________________________
**(Print name)** *SALT F SH INC*
Date ______ B YER ______________________________
**(Print name)** ______________________________

☐ Additional Signature ddendum attached (C.A.R. Form ASA).

Seller's Initials ( ________ )( ________ )



Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com Untitled

EXHIBIT 2

Property Address: *105 '0 S. FIGUEROA ST, Los Angeles, 90003* Date: *July 1, 2017*

**41. ACCEPTANCE OF )FFER:** Seller warrants that Seller is the owner of the Property. or has the authority to execute this Agreement. Seller accepts the above c fer and agrees to sell the Property on the above terms and conditions, and agrees to the above confirmation of agency relationships. Seller nas read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

☐ (If checked) SEL .ER'S ACCEPTANCE IS **SUBJECT TO ATTACHED COUNTER OFFER (C.A.R. Form SCO or SMCO) DATED:** ______________.

☐ One or more Selle s is signing the Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Cap city Signature Disclosure (C.A.R. Form RCSD-S) for additional terms.

Date *07/01/2017* : ELLER ______________________

**(Print name)** ***BEAR IGUEROA LLC***

Date ______ : ELLER ______________________

**(Print name)** ______________________

☐ Additional Signature ddendum attached (C.A.R. Form ASA).

(_____/_____) (Initials) **(Do iot initial if making a counter offer.) CONFIRMATION OF ACCEPTANCE:** A Copy of Signed Acceptance was pers nally received by Buyer or Buyer's authorized agent on (date) *July 1, 2017* at *7* ☒ AM/☐ PM. **A b nding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's auth rized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in o der to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has ccurred.**

**REAL ESTATE BROI ERS:**

**A. Real Estate Brok s are not parties to the Agreement between Buyer and Seller.**

**B. Agency relations ips are confirmed as stated in paragraph 2.**

**C.** If specified in para raph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.

**D. COOPERATING E ROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker **(Selling Firm)** and Cooperating Broker agrees to a cept, out of Listing Broker's proceeds in escrow, the amount specified in the MLS, provided Cooperating Broker is a Participant of t e MLS in which the Property is offered for sale or a reciprocal MLS. If Listing Broker and Cooperating Broker are not both Participan s of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate writt n agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting v ll be required or that an exemption exists.

Real Estate Broker (S lling Firm) ***FOR SALE BY OWNER*** CalBRE Lic. # ______
By ______ CalBRE Lic. # ______ Date ______
By ______ CalBRE Lic. # ______ Date ______
Address ______ City ______ State ______ Zip ______
Telephone ______ Fax ______ E-mail ______

Real Estate Broker (Li ting Firm) ***FOR SALE BY OWNER*** CalBRE Lic. # ______
By ______ CalBRE Lic. # ______ Date ______
By ______ CalBRE Lic. # ______ Date ______
Address ______ City ______ State ______ Zip ______
Telephone ______ Fax ______ E-mail ______

**ESCROW HOLDER ACI NOWLEDGMENT:**

Escrow Holder acknowle ges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ ______ ), counter offer numbers ______ ☐ Seller's Statement of Information and ______ ______, and agrees to act as Escrow Holder subject to paragraph 29 of this Agreement, any supplemental escrow ins uctions and the terms of Escrow Holder's general provisions.

Escrow Holder is advise that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is ______

Escrow Holder ______ Escrow # ______
By ______ Date ______
Address ______
Phone/Fax/E-mail ______
Escrow Holder has the fo owing license number # ______
☐ Department of Busine : Oversight, ☐ Department of Insurance, ☐ Bureau of Real Estate.

**PRESENTATION OF OF ER:** (______) Listing Broker presented this offer to Seller on ______ (date).
Broker or Designee Initials

**REJECTION OF OFFER** (______)(______) No counter offer is being made. This offer was rejected by Seller on ______ (date).
Seller's Initials

©2014, California Associatio of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by ph ocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN AF ROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY I ROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU D SIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Dist buted by:
REAL ESTATE BU INESS SERVICES, INC.
*a subsidiary of the ALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Av nue, Los Angeles, California 90020

Buyer's Acknowledge that page 11 is part of this Agreement (______)(______)

Reviewed by
Broker or Designee ______

EXHIBIT 2

CALIFORNIA ASSOCIATION OF REALTORS®

# BUYER'S INSPECTION ADVISORY

(C.A.R. Form BIA, Revised 11/14)

Property Address: 10? 20 S. FIGUEROA ST, Los Angeles, 90003 ("Property").

1. **IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.
2. **BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as those listed below. If Broker gives you referrals to professionals, Broker does not guarantee their performance.
3. **YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY, INCLUDING BUT NOT LIMIITED TO THE FOLLOWING. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS**
   - A. **GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof (condition, age, leaks, useful life), plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa (cracks, leaks, operation), other structural and nonstructural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property.
   - B. **SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other barriers or markers do not necessarily identify true Property boundaries.
   - C. **WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms.
   - D. **SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage.
   - E. **WATER AND UTILITIES; WELL SYSTEMS AND COMPONENTS;WASTE DISPOSAL:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components. The type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.
   - F. **ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants).
   - G. **EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood
   - H. **FIRE, HAZARD AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies.
   - I. **BUILDING PERMITS, ZONING AND GOVERNMENTAL REQUIREMENTS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size.
   - J. **RENTAL PROPERTY RESTRICTIONS:** Some cities and counties impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements.
   - K. **SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property.
   - L. **NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, law enforcement, crime statistics, registered felons or offenders, fire protection, other government services, availability, adequacy and cost of internet connections or other technology services and installations, commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

**By signing below, Buyers acknowledge that they have read, understand, accept and have received a Copy of this Advisory. Buyers are encouraged to read it carefully.**

Buyer ______ Buyer ______
SALT FISH INC

© 1991-2004, California Association of REALTORS®, Inc. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by ____ Date ____



EQUAL HOUSING OPPORTUNITY

TM Real Estate Brokers 1800 Palo Verde Ave # E Long Beach, CA 90815 Phone. 562.244.0093 Fax: 562.598.9846 Untitled
Tony Amer
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **337 North Vineyard Ave, Suite 100, Ontario, CA 91764**

A true and correct copy of the foregoing document entitled (*specify*): **MOTION NOTICE OF MOTION AND MOTION FOR AUTHORITY TO SELL ESTATE PROPERTY (10520 SOUTH FIGUEROA ST., LOS ANGELES, CA 90003) FREE AND CLEAR OF ALL LIENS, CLAIMS AND INTERESTS; AND GRANTING CERTAIN OTHER RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF DENISE JOHNSON IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **08/7/2017** , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Lionel E Giron on behalf of Debtor Bear Figueroa LLC notices@lglawoffice.com, tangkevin911@gmail.com
Mark S Krause on behalf of Creditor The Evergreen Advantage, LLC, a California limited liability company bankruptcy@zbslaw.com, mkrause@ecf.courtdrive.com
Erin M McCartney on behalf of Creditor The Evergreen Advantage, LLC, a California limited liability company bankruptcy@zbslaw.com, emccartney@ecf.courtdrive.com
Kelly L Morrison on behalf of U.S. Trustee United States Trustee (LA) kelly.l.morrison@usdoj.gov
Kevin Tang on behalf of Debtor Bear Figueroa LLC tangkevin911@gmail.com
United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On **08/07/2017,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Secured Creditors, Twenty Largest Unsecured Creditors, and ALL Interested Parties**
**Judge's Copy:**
**Chambers of the Honorable Vincent Zurzolo, 255 E. Temple Street, Suite 1360, Los Angeles, CA 90012**

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on __, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| **August 7, 2017** | Alma Perez | /s/ Alma Perez |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

CREDITOR

Denise Johnson
10736 Jefferson Blvd., Ste 926
Culver City, CA 90230

FCI Lender Services
PO BOX 27370
Anaheim, CA 92809-0112

Franchise Tax Board
Bankruptcy Section, MS: A-340
PO BOX 2952
Sacramento, CA 95812-2952

Internal Revenue Service
PO BOX 7346
Philadelphia, PA 19101

Los Angeles County Treasurer and
Tax Collector
PO BOX 54110
Los Angeles, CA 90054

Los Angeles DWP
111 N Hope St.,
Los Angeles, CA 90012

Sylvester Mack
10520 Figueroa Blvd., Atp 7
Los Angeles, CA 90003